McIlvane, J.
The defendant, as a common carrier of passengers, was authorized, by the provisions of section 12 of the act of February, 1848 (S. & C. 271), to demand and receive compensation for such service as follows: “Such corporations may demand and receive for the transportation of passengers on said road, not exceeding three and a half cents per mile, .... when the same are transported a distance of thirty miles or more; and in case the same are transported for a less distance than thirty miles, such reasonable rate as may be from time to time fixed by said company,” etc.
The trial in the Court of Common Pleas proceeded upon the theory that, under these provisions, the defendant, in fixing the rate of fare, was authorized to discriminate between the price to be paid by passengers to the conductor on board the train, and the price to be paid for the same distance at the ticket-office of the company, and that such discrimination might be made in favor of the ticket system, provided the higher rate or car-price should not exceed the maximum allowed by the statute, namely, three and a halt cents per mile for distances of thirty miles or more, or a reasonable rate for shorter distances.
Assuming this theory to be correct, we find that the defendant had fixed the fare from Crestline to Mansfield, a distance of thirteen and a half miles, at fifty cents, if prepaid for a ticket at the ticket-office of the company, and at eighty cents, if paid on the cars to the conductor. Whether the defendant had lawful authority under the provisions o± .said 12th section, to charge eighty cents for fare between those stations, was a material issue on the trial of the case; the defendant claiming, and the plaintiff denying the right to so charge.
This issue was submitted to the jury, with the following instructions, by the court:
“The first inquiry is, whether the fare of eighty cents •established by the company for the transportation of passengers from Crestline to Mansfield, who do not purchase tickets, but pay on the cars, is a reasonable rate ? This is *15 a question of fact submitted to yon for determination; and in passing upon that question, you may .take into consideration the ordinary and usual rate of railroad fare for the transportation of passengers that distance, together with such other circumstances, evidence in this case, as would tend to create and sustain, as a reasonable fare between these points, a sum differing from the general or customary railroad fare.” To all which the defendant excepted.
This was an issue of fact for the determination of the jury — to be determined, however, in accordance with such instructions from the court, as under the circumstances of the case were applicable thereto. That some latitude should be given to the discretion and judgment of the company, which is authorized, from time to time, to fix the fare at “reasonable rates,” is undoubtedly true, but it is as certainly true, that the discretion of the company in the matter is not unlimited.
If the rate fixed for a distance less than thirty miles were in excess of the maximum allowed for thirty miles or more, the court would at once declare it to be unreasonable, but I can conceive of no other instance in which like judgment could be pronounced without the aid of testimony; and yet, it is clear, there might be other instances of unreasonable rates; for it would certainly be unreasonable to fix the rate for every distance less than thirty miles at the maximum allowed for full thirty miles. Whenever, therefore, the determination of the question whether the rate be reasonable, involves the necessity of hearing testimony, it falls within the province of the jury.
That the court, in this case, might have given the jury further instructions in relation to the question, may be conceded, but inasmuch as those given were unobjectionable, and the defendant did not specially request others, we must hold that.it has no ground for complaint in this respect.
2. The defendant below requested the court to instruct the jury as follows :
“That notwithstanding the defendant had established the sum of fifty cents as its ticket-fare from Crestline to *16 Mansfield, still if the evidence fairly satisfies the jury that' a greater sum than fifty cents would still be a reasonable fare when paid upon the cars, then the plaintiff was bound to tender, or offer to pay, to defendant’s conductor such greater sum, whatever it might be, and if he did not do so the is not entitled to a verdict.” Which instruction the court refused to give, but did charge the jury in writing as follows:
“ If you find the car fare of eighty cents unreasonable and therefore illegal; that the ticket fare was fifty cents; that the conductor refused to take less than eighty cents — - then the tender of fifty cents is all that the plaintiff would be required to make; and if the conductor, after that tender, ejected plaintiff from the ear, because plaintiff did not pay the eighty cents demanded of him, the company would be liable.”
In so charging and refusing to charge, there was no error to the prejudice of the defendant. If error exist here, it is in the implication that a tender on the part of the-, plaintiff of the ticket-rate of fare, was necessary to entitle him to recover. The defendant was a common carrier of passengers, and there being no rule of law or regulation of the company requiring the plaintiff to pay his fare and' purchase a ticket before taking passage, he had a right to-go upon the train as he did, in the character of a passenger;. and if he were rightfully upon the train at the time it started, and the conductor, acting under the direction of the defendant, refused to take less than eighty cents — an exorbitant and illegal demand — the plaintiff’was relieved from, that which would otherwise have been his duty, to wit, the tendering of reasonable fare. But if a tender were necessary, the instruction given must be approved, and for these reasons : The defendant, by the statute, was restricted in its right to demand and receive fare from passengers for a distance less than thirty miles, to such reasonable rate as it might fix from time to time. It had fixed two rates — one-within the limits of its authority, and the other beyond ; the former was reasonable, and the latter unreasonable and> *17 oppressive; it bad a right to demand and receive the-former rate, but not the latter. And again, it would be unreasonable and unjust to cast upon the passenger the-consequences of making a mistake in determining the limits of reasonable fare, and- to require him, at his peril,, to tender the maximum of what would be considered reasonable, in a case where a rate confessedly reasonable, had been fixed and published by the company. In such case-the passenger may well and safely adopt for his standard,, the legal rate so fixed by the company.
8. On the question of damages the court instructed the-jury as follows :
“Should you find the company liable, you will proceed to determine the damages for plaintiff. The plaintiff is= entitled to recover for all the injury which naturally resulted from the wrong act of the defendant — the injury to the feelings caused by a public expulsion from the cars ; the injury to his health, which resulted from exposure to the inclemency of the weather (if you should find that such injury-accrued), and from being compelled to walk to a neighbor’s house, and the expense to which plaintiff was subjected in, reaching Mansfield; if you find for the plaintiff'in this case, you will render a verdict for the amount of damages which' you may find he has sustained in the premises; if for the defendant, you will render a verdict accordingly.”
The point is made, that the case was not one in which exemplary or punitive damages were allowable, there being, as is claimed by defendant, no showing that its conduct was influenced by fraud, malice, or other willful wrong, and therefore it was error to include in the verdict damages, for “ injury to the feelings caused by a public expulsion from the cars.” It is not necessary that we should determine whether- or not the circumstances of this case would have justified the awarding of damages purely exemplary or punitive; for the reason, that the court in submitting the ease to the jury,, confined their inquiry to such damages as the plaintiff “ sustained in the premises,” including damages for “ the injury *18 to the feelings caused by a public expulsion from the cars.” That damages beyond the measure of fall compensation may, under certain circumstances, be allowed for example’s sake and by way of punishment, is no longer an open question in this state; and it is also settled that such damages can be given only in cases of fraud, malice, or other willful wrong. But it by no means follows that full and complete reparation for all injuries inflicted by a wrongful act can be made only in cases which justify an assessment beyond that measure. In Roberts v. Mason, 10 Ohio St. 277, which was a case for personal tort prompted by malice, the court said, “In such case the jury may, in their estimate of compensatory damages, take into consideration and include reasonable fees of counsel employed by the plaintiff in the prosecution of his action.” The court did not mean to be understood thereby, that the damages in such case must be confined to compensation, for it had already declared in the same case, that the jury might go beyond the rule of mere compensation. The doctrine there announced is, that in a case where punitive as well as compensatory damages may be awarded, the jury, in discriminating, should regard counsel fees as compensation and not as punishment. If an injured party may be indemnified against the expenses of counsel fees upon the principle of compensation, a fortiori should he be compensated for mental or physical suffering resulting directly from such wrongful act. It is true, the law does not profess to compensate for remote and possible injuries resulting from the act of a wrong-doer, but it does profess to make the injured party whole, by compensating him, in damages, for all the natural, necessary, and probable injuries resulting therefrom; and that, too, without respect to the motives which influenced the wrongful act. And this, upon the plainest principles of justice; for, as between innocent parties, if a damage must be sustained, he that caused the injury should bear its consequences.
This process of reasoning brings us to the inevitable conclusión, that injuries to the person, whether they consist of mental or physical pain, as well as loss of time or property, *19 which naturally and necessarily result from the wrongful and deliberate act of the defendant, are proper subjects for the consideration of the jury in their estimate of compensatory damages. That physical pain, caused by an act of trespass on the person, constitutes a legitimate ground for compensatory damages, no one disputes. And why should not mental suffering as well? Is it more endurable than physical suffering? Is it a less probable consequence of a trespass against the person of another? Is the mind an object of less concern in the judgment of the law than the body? Is it any less a part of the person ? Is compensation in money for mental suffering more difficult to estimate than for physical pain? I can find no good reason for affirming any of these distinctions. Conceding, therefore, that the case made against the defendant would not have justified a verdict for damages beyond the rule of compensation, and for punishment merely, a majority of the court are of opinion that there was no error in this charge, to wit, that in estimating the damages “sustained” by the plaintiff in the premises, “the injury to the feelings caused by a public expulsion from the cars,” was a proper subject for the consideration of the jury.
4. Upon the second trial, a verdict and judgment were rendered in favor of the plaintiff for $700. The testimony shows that he was wrongfully and publicly expelled from, the defendant’s train, whereon he was a passenger, for the sole reason that he refused to pay an unreasonable rate of fare ; that he was put off at a place other than a station on the road ; that he. was obliged to seek other means of travel to the place of his destination, and it also tended to show that his health was impaired by the consequent exposure. Under these circumstances, although we ‘might differ with the jury as to amount of damages, still we are not able to say that the record shows that the verdict was influenced by passion or prejudice.
Judgment of the District Court reversed, and the judgment of the Common Pleas affirmed.